CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/10/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SCOTT A. WHORLEY,<br>　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>INTERNATIONAL PAPER,<br>　　　　　　　　　*Defendant.* | CASE NO. 6:21-cv-00045<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

 Scott Whorley alleges he was fired by his employer, International Paper, because he was perceived as posing a COVID-19 threat to the workplace. Whorley now seeks reinstatement and back pay under the Americans with Disabilities Act and the Virginians with Disabilities Act. Before the Court is International Paper's motion to dismiss, in which it argues that Whorley's complaint fails to state a claim under either statute. Whorley's suit will be dismissed because he has not raised a plausible inference either that he was perceived as disabled or, even assuming he was, that his termination was caused by that perception.

### I. Background

 The following facts are alleged in Plaintiff's complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review). In December of 2020, two members of Whorley's household tested positive for COVID-19. Dkt. 17 ("Complaint") ¶ 11. Whorley informed his supervisor of his exposure and was instructed to stay home for the day. *Id.* ¶ 15. Whorley's general manager later told Whorley to quarantine for 10 days before returning to work, *id.*, and also requested additional

information regarding the "extent" of his exposure, *id.* ¶ 16. Whorley explained that his fiancé and son had tested positive for the virus, and that he himself was scheduled to be tested following his quarantine. *Id.* ¶ 17. Whorley's general manager called Whorley each day to check in. *Id.* ¶ 18.

Whorley returned to work when his quarantine ended. *Id.* ¶ 19. But he was suspended pending termination the following day, *id.* ¶ 20, and was fired within the week, *id.* ¶ 21. Whorley was told he was being fired for willfully misrepresenting information to the company. *Id.* ¶ 24. Specifically, "Defendant's agents wrongfully asserted that Plaintiff had claimed to have contracted COVID-19, rather than merely informing Defendant of his exposure to COVID-19." *Id.* ¶ 23 (emphasis original).

In over four years of employment, Whorley had never been "written up" or subject to any disciplinary action. *Id.* ¶ 14. To the contrary—he "attended work regularly, and met or exceeded his employer's expectations on a daily basis." *Id.* ¶ 13. Whorley also maintains that he never lied or misled anyone about his COVID-19 status.[1]

## II. Legal Standard

Whorley correctly argues that he is not obligated to make out a prima facie case of discrimination at the pleading stage of litigation.[2] But he still must allege facts sufficient to

---

[1] Whorley also states that he was treated differently from similarly situated employees. Complaint ¶ 26. As he alleges no facts to support this conclusory assertion, it is not considered. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (clarifying that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual content").

[2] The parties' discussion of the *McDonnell Douglas* framework warrants a brief note. To succeed on a claim for employment discrimination under the ADA, Whorley would ultimately be required to prove, by a preponderance of the evidence, that his termination resulted from intentional discrimination on the basis of a disability. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995). He could do so by offering either direct or

render all elements of his claim plausible under the familiar strictures of Rule 12(b)(6) review. *McCleary-Evans v. Md. Dept. Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (explaining that while district court erred in requiring plaintiff to plead facts establishing a prima facie Title VII claim, employment discrimination plaintiffs still must satisfy the "ordinary rules for assessing the sufficiency of a complaint") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting

---

circumstantial evidence. If he chose to rely on circumstantial evidence, he might make use of the *McDonnell Douglas* framework. *See id.* at 59 (explaining that the *McDonnell Douglas* framework is a "useful tool" when properly used to "sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her"). Under this method, Whorley would attempt to render his claim presumptively probable—thus shifting the burden to the defendant to offer countervailing evidence—by showing that he was (1) disabled within the meaning of the ADA, (2) discharged, (3) otherwise performing his job at a level that met his employer's legitimate expectations, and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. *Id.* at 58. *See also id.* ("In general terms, a plaintiff establishes a *prima facie* case by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination.").

But this motion is concerned with the pleading requirements of Rule 12(b)(6), not the evidentiary standard that would ultimately govern Whorley's claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2008). As elaborated below, Whorley's present burden is not to offer sufficient evidence to render his claim probable, but merely to allege facts that, taken as true, render his claim plausible. *Cf. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). While reference to the elements of a prima facie case may indeed be "helpful" in a 12(b)(6) analysis, since factual allegations (when assumed true) meeting the *McDonnell Douglas* probability standard would also necessarily meet 12(b)(6)'s plausibility standard, *see Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019), there is a very real danger of denying the antecedent.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id*. at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

### III. Analysis

The Americans with Disabilities Act ("ADA") makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Including by "discharging qualified employees because they are disabled." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014). Accordingly, Whorley's claims hinge on whether he has alleged sufficient facts to render facially plausible his belief that he was fired due to a covered disability.[3] He has not.

---

[3] Liability under the Virginians with Disabilities Act ("VDA") "follow[s] the standards established in the federal Rehabilitation Act of 1973 and adopted in the ADA." *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 216 (4th Cir. 1994). International Paper points to the omission of statutory language in the VDA's definition of disability, which otherwise parallel's the ADA's definition, to dispute whether the VDA, like the ADA, creates a cause of action for those who are merely "regarded as" disabled. Because Whorley has failed to state a "regarded as" claim under the ADA, the Court declines to separately address the question whether the VDA also covers "regarded as" claims.

**A. Whorley has not raised a plausible inference that he was regarded as disabled**

The ADA defines "disability" to include: (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Whorley argues that he was disabled under the third prong—that his exposure to COVID-19 led his employer to regard him as having a disability.

Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when he or she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. § 12102(3).[4] The Code of Federal Regulations defines "physical or mental impairment" to mean:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

---

[4] An individual cannot be "regarded as having such an impairment," however, if the impairment is "transitory or minor." § 12102(3)(B). Some lower courts have declined to consider whether a plaintiff's impairment is "transitory or minor" at the motion to dismiss phase under the theory that this aspect of the definition creates an affirmative defense. *See e.g.*, *Alvarado v. ValCap Grp., LLC*, No. 3:21-cv-01830, 2022 WL 953331 *4 (N.D. Tex. Mar. 30, 2022) (Fitzwater, J.); *Fortun v. iAero Thrust LLC.*, No. 21-cv-23348, 2022 WL 446209 *5 (S.D. Fla. Feb. 14, 2022) (Bloom, J.); *Cupi v. Carle Bromenn Med. Ctr.*, No. 1:21-cv-01286, 2022 WL 138632 *4 n.5 (C.D. Ill. Jan. 14, 2022) (McDade, J.); *Burbach v. Arconic Corp.*, 561 F.Supp.3d 508, 520 (W.D. Pa. Sept. 22, 2021) (Eddy, J.); *Cash v. Magic City Motor Corp.*, No. 7:16-cv-00192, 2017 WL 281755 *5 (W.D. Va. Jan 20, 2017) (Conrad, J.). *But see e.g.*, *Saville v. Adday, Inc.*, No. 3:21-cv-00011, 2021 WL 5414293 *2 (M.D. Ga. May 18, 2021) (Royal, J.). Because Whorley has not raised a plausible inference that he was perceived as having an impairment of any kind, the Court need not address whether his perceived impairment was "transitory or minor."

29 C.F.R. § 1630.2(h).

The Complaint is devoid of factual allegations from which the Court could infer that Whorley's COVID-19 exposure was thought by anyone at International Paper to amount to a "physical or mental impairment." While Whorley was instructed to stay home, this shows only that Centers for Disease Control guidance was followed. *See Cupi v. Carle Bromenn Med. Ctr.*, No. 1:21-cv-01286, 2022 WL 138632 *4 (C.D. Ill. Jan. 14, 2022) (McDade, J.).

Some courts have found that a person may be "regarded as" disabled if they are thought to have contracted COVID-19. *See e.g.*, *Fortun v. iAero Thrust LLC.*, No. 21-cv-23348, 2022 WL 446209 *5 (S.D. Fla. Feb. 14, 2022) (Bloom, J.); *Matias v. Terrapin House, Inc.*, No. 5:21-cv-02288, 2021 WL 4206759 *4 (E.D. Pa. Sept. 16, 2021) (Leeson, Jr., J.). But Whorley's complaint does not allege facts raising a plausible inference that he was thought to have COVID-19 at the time he was fired. The Complaint actually avers facts establishing the opposite: that Whorley was terminated because he was thought to have misled his supervisors to believe he had COVID-19 *when in fact he did not*. It also strikes the Court as implausible that Whorley would have been instructed to return to work if he was thought to be COVID positive.

**B. Whorley has not raised a plausible inference his termination was related to COVID-19**

Even assuming Whorley was regarded as having a disability within the meaning of the ADA, the facts pled in the Complaint do not plausibly support the inference that he was terminated for that reason. Whorley specifically alleges a non-discriminatory basis for his termination: lying. Complaint ¶ 23. That Whorley may have been innocent of this offense does not alone give rise to a plausible inference that the stated reason was pretext for unlawful discrimination.

The Fourth Circuit's *Bing* decision is instructive here. In that case, Bing, an African American employee, brought a Title VII race discrimination action against his employer relating to the employer's decision to fire him his first day on the job. *See* 959 F.3d at 609. "Within an hour of starting orientation," Bing was confronted with a news article about his tangential involvement in a shooting and sent home. *Id*. According to Bing, both his termination and the google search that uncovered the news article were prompted by his physical appearance. *Id*. The Fourth Circuit affirmed the lower court's 12(b)(6) dismissal because, even accepting as true all facts contained in Bing's complaint, it could not reasonably infer racial discrimination. *Id*. at 617 ("Missing from Bing's complaint are factual allegations that support such an inference"). In fact, the Court noted, Bing's complaint "specifically alleged a non-racial reason for the termination. He asserted [he was] terminated [] because of the information from a newspaper article about the shooting incident involving [his] gun." *Id*. The Fourth Circuit also rejected Bing's argument that he could "find nothing other than his (possibly unexpected) physical appearance as an African-American male to explain" the google search. *Id*. (cleaned up). The panel instead found that with this statement Bing had "effectively conceded he did not have facts to support his conjecture," reasoning that "[b]eing aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination." *Id*. at 618.

Whorley likewise failed to plead sufficient facts from which this Court could plausibly infer that his termination was motivated by discrimination. To review, Whorley alleged that his employer (1) knew he had been exposed to COVID-19, (2) thought he had contracted COVID-19, and (3) subsequently terminated Whorley's employment with the justification that Whorley had lied about the nature of his COVID status (when he had not). While these facts may be

consistent with Whorley's belief that he was fired because he was regarded as a COVID threat, "[t]he mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Id*. "Rather than drawing a reasonable inference, [the Court] would have to 'speculate' to 'fill in the gaps'" to "disregard the reason given" by International Paper for Whorley's termination. *Id*.

## IV. Conclusion

Whorley has not offered facts giving rise to a plausible inference either that he was disabled within the meaning of the ADA or that he was fired for that reason. Thus, his assertions do not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The motion to dismiss will be granted.

\* \* \* \*

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this __10th__ day of August 2022.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE